IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                  No. 09-10020 B

FORTRELL LATRAE SAIN,

    Defendant.

_____

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS
_____

    Before the Court is the motion of the Defendant, Fortrell Latrae Sain, to suppress evidence. The Defendant was charged in a one-count indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Sain has moved to suppress evidence obtained as a result of a search of his vehicle on the grounds that the officers' actions violated his rights under the Fourth Amendment of the United States Constitution.

    At a hearing conducted on September 24, 2009, the Government presented the testimony of Shane Beaver, a ten-year veteran of the Jackson, Tennessee Police Department. At approximately 1:00 p.m. on January 15, 2009, he received a BOLO (Be On the LookOut) broadcast from Officer Bill Taylor, who had been working on a domestic assault case. Taylor advised officers to be on the lookout for a male black identified as Sain driving a 1988 red Ford Mustang with a black drop-down or convertible top, which was registered to the Defendant. Taylor also mentioned that the victim had sustained some minor injury and that the suspect was armed with a handgun that might be under the front seat or in a blue backpack or knapsack. According to the police report entered as an exhibit at the hearing, Taylor's advice as to the gun stated that there "possibly" was a firearm in the car.

There was no indication from Taylor where the backpack might be located.

When Beaver received the report, he was at the Bemis Intermediate School on D Street in Jackson. A few minutes later, he observed a vehicle matching the description traveling from the area of Missouri Street down D Street toward the Riverside/Steam Mill Ferry intersection. Beaver pulled in behind the Mustang and ran the license plate. He was advised the vehicle was registered to a Fortrell Sain. After about one-half mile, Sain entered a Super Stop store[1] parking lot and stopped in front of a gas pump. The officer requested backup and stationed himself in another parking lot some fifty yards away so that he could observe the Defendant, as he did not want to approach him alone. Less than two minutes later, two other officers arrived in separate patrol cars. They moved in, weapons drawn, and detained Sain, who at that time was standing between his vehicle and the gas pump. The officers ordered him to the ground, handcuffed him and conducted a patdown search.

The Defendant's identity was confirmed by Sain himself both verbally and by proffering his driver's license. Afterward, he was placed under arrest. Sain asked the officers why he was being arrested and denied being involved in the domestic assault. Officers then performed a more thorough search of Sain's person. The officers asked him where in the vehicle the gun was located, to which the Defendant responded that he did not have a gun. A search of the Mustang revealed a blue backpack underneath some other items in the trunk area of the automobile, which Beaver described as a hatch-back. The backpack contained a black handgun, a magazine and several rounds of ammunition. Officers then pulled a patrol car alongside the Mustang and placed Sain, who had stood near his vehicle during the search, inside the cruiser. Beaver estimated the time from the

---

[1] The actual name of the business is Superway Discount Tobacco and Gas.

initial confrontation to Sain's placement in the squad car to be between fifteen and twenty minutes. The car was left in the store parking lot with the consent of the property owner and eventually picked up by the Defendant's brother. Beaver related that the Jackson Police Department has a policy requiring inventory searches of vehicles upon the arrest of the driver, whether the car is towed, left parked on private property or released to another individual.

On cross examination, Beaver stated that he did not recall asking Sain for consent to search the vehicle, as he was under arrest. Therefore, the officer believed he did not need to obtain consent. Officers initially searched the passenger compartment of the Mustang and found nothing. They then obtained the keys from Sain's pocket in order to open and search the trunk area. The trunk could be accessed from the car's interior by reaching through the back seats or folding them down. Beaver recalled that the incident occurred on a cold day and that the Defendant stood handcuffed outside his car for some time while the search proceeded.

The Court also heard the testimony of Tracy Sain, the Defendant's brother. He stated that, on the day of Fortrell Sain's arrest, he received a phone call at work from his wife who had been driving past the Superway store and observed the arrest. Tracy Sain left work and drove to the scene, approximately two miles away. He recalled seeing two police cars parked near the road and his brother's car beside the store, not in front of the gas pump. The witness did not immediately see his brother and entered the store to ask what was going on. He was informed by a police officer that the Mustang had been searched. Tracy Sain later took possession of the vehicle.

The Fourth Amendment guarantees that the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures . . ." U.S. Const. amend. IV. "In the absence of probable cause, an arrest constitutes an unreasonable seizure in violation of the

Fourth Amendment." United States v. Torres-Ramos, 536 F.3d 542, 554 (6th Cir.), *cert. denied sub nom.* Rhaburn v. United States, ___ U.S. ___, 129 S. Ct. 772, 172 L. Ed. 2d 761 (2008); *see also* Herring v. United States, ___ U.S. ___, 129 S. Ct. 695, 698, 172 L. Ed. 2d 496 (2009). "Probable cause requires officers to 'show more than mere suspicion' but 'does not require that they possess evidence sufficient to establish a prima facie case at trial, must less evidence to establish guilt beyond a reasonable doubt.'" United States v. Evans, ___ F.3d ___, 2009 WL 2997917, at *7 (6th Cir. Sept. 22, 2009) (quoting United States v. Strickland, 144 F.3d 412, 416 (6th Cir. 1998)). Moreover, "[p]robable cause does not require any showing that the officer's suspicions prove to be correct or that they are more likely true than false." United States v. Stewart, 315 F.App'x 554, 557 (6th Cir.), *cert. denied*, ___ S. Ct. ___, 2009 WL 1574273 (No. 08-10774) (U.S. Oct. 5, 2009) (quoting United States v. Caicedo, 85 F.3d 1184, 1192 (6th Cir. 1996)). "Probable cause is a fluid concept -- turning on the assessment of probabilities in particular factual contexts -- not readily, or even usefully, reduced to a neat set of legal rules." United States v. Lopez, No. 2:08-CR-94, 2009 WL 982777, at *2 (E.D. Tenn. Apr. 13, 2009) (quoting Illinois v. Gates, 462 U.S. 213, 232, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1976)).

In order to determine if probable cause to arrest exists, the Court must determine "whether, at the time of the arrest, the facts and circumstances within the arresting officer's knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person to conclude that an individual either committed or was committing an offense." Torres-Ramos, 536 F.3d at 555 (quoting Beck v. Ohio, 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964)) (internal quotation marks omitted). Probable cause may arise from the collective knowledge of all police officers involved. United States v. Perkins, 994 F.2d 1184, 1189 (6th Cir.), *cert. denied*, 510 U.S.

903, 114 S. Ct. 279, 126 L. Ed. 2d 230 (1993). In making its determination, the Court is to look to the totality of the circumstances. Gates, 462 U.S. at 230-31, 103 S. Ct. at 2328.

The Defendant first argues that the officers failed to verify his identity prior to the search of his vehicle and seizure of the gun. However, this contention is not borne out by the uncontroverted testimony of Beaver, who stated that Sain's identity was confirmed prior to the arrest and search. He also contends that officers failed to attempt to ascertain whether he was in fact involved in the reported domestic assault. This too is incongruous with the hearing testimony, which reflects that Sain was advised of the reason for his arrest. While the Defendant denied involvement in the assault, the officers were not bound to simply accept his assertion and go on their way. *See* Mistretta v. Prokesch, 5 F. Supp. 2d 128, 135 (E.D.N.Y. 1998) (suspect's denial "is a factor the officer may consider in determining whether probable cause exists, but it does not require the officer to forego arrest if the facts otherwise establish probable cause[; t]o hold otherwise would allow suspects to avoid arrest simply by denying guilt"). In addition, the Defendant insists that the officers lacked probable cause to arrest him because they failed to question him as to where he was coming from, what he was doing in the area, or his whereabouts during the previous hour. Not surprisingly, Sain offers no caselaw suggesting that a finding of probable cause is dependent upon asking such questions. *See* Lopez, 2009 WL 982777, at *2 (refusing to reduce the probable cause determination to a "neat set of legal rules").

In Tennessee "[i]f a law enforcement officer has probable cause to believe that a person has committed a crime involving domestic abuse, whether the crime is a misdemeanor or felony, or was committed within or without the presence of the officer, the preferred response of the officer is arrest." Tenn. Code Ann. § 36-3-619(a). The hearing testimony reveals that officers received a call

from Taylor to be on the lookout for a black male in connection with a domestic assault case in which the complainant had been injured. He identified the individual as Sain and advised that he would be driving a 1988 red Ford Mustang and would possibly be armed. Beaver observed a vehicle matching the description and ran the license plate, which he learned was registered to the Defendant. Thus, in the Court's view, Beaver, at the time of Sain's arrest, had "reasonably trustworthy information sufficient to warrant a prudent person to conclude that [Sain] either committed or was committing an offense" and, thus, possessed probable cause to arrest the Defendant. *See* Torres-Ramos, 536 F.3d at 555, *supra*.

The Court next turns to the search of the Mustang, which the Defendant argues also violated the Fourth Amendment. Pursuant to the Fourth Amendment, "with some specifically delineated exceptions, every governmental search and seizure must be made pursuant to a warrant." United States v. Taylor, 248 F.3d 506, 511 (6th Cir.), *cert. denied*, 534 U.S. 981, 122 S. Ct. 414, 151 L. Ed. 2d 315 (2001). Evidence obtained by a warrantless search and seizure that violates the Fourth Amendment is inadmissible in a criminal trial. United States v. Wright, 16 F.3d 1429, 1434 (6th Cir.), *cert. denied,* 512 U.S. 1243, 114 S. Ct. 2759, 129 L. Ed. 2d 874 (1994).

Under the "automobile exception" to the warrant requirement, "police officers may conduct a warrantless search of a vehicle if they have 'probable cause to believe that the vehicle contains evidence of a crime.'" United States v. Smith, 510 F.3d 641, 647 (6th Cir. 2007), *reh'g en banc denied* (May 13, 2008) (quoting United States v. Lumpkin, 159 F.3d 983, 986 (6th Cir. 1998); Smith v. Thornburg, 136 F.3d 1070, 1074 (6th Cir. 1998)). "Critically, the scope of a warrantless search of an automobile is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to

6

believe that the contraband may be found." United States v. Howton, 260 F.App'x 813, 817 (6th Cir.), *cert. denied*, ___ U.S. ___, 128 S. Ct. 2946, 171 L. Ed. 2d 874 (2008), *reh'g denied* ___ U.S. ___, 129 S. Ct. 26, 171 L. Ed. 2d 929 (2008) (quoting United States v. Ross, 456 U.S. 798, 824, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982)) (internal quotation marks omitted).

Here, officers possessed objective facts indicating that the Mustang might contain contraband in the form of a firearm. Thus, they had probable cause to search the vehicle for the gun, including those areas in which the backpack might be found. The law does not require that the officers knew for a certainty that a gun was in the Mustang, as "[p]robable cause exists when there is a *fair probability* that contraband or evidence of a crime will be found in a particular place." Smith, 510 F.3d at 649-50 (emphasis added). Nor does it matter that Sain was in police custody at the time of the search, since even though officers "might have had time to secure a warrant to search the automobile, there was no requirement that [they] do so." Id. at 650 (quoting United States v. Hofstatter, 8 F.3d 316, 322 (6th Cir. 1993)). Based on the totality of the circumstances, the Court finds officers had probable cause to search the Mustang pursuant to the automobile exception.[2] In light of the Court's conclusion, it need not consider whether the search was valid under any other exception to the warrant requirement.[3]

For the reasons set forth herein, the motion to suppress is DENIED.

---

[2]In the Court's view, the existence of language in the police report that the gun was located "[d]uring a search incident to arrest" does not vitiate application of the automobile exception. The testimony at the hearing as well as the totality of the police report clearly indicate that officers had probable cause to believe the Mustang contained a firearm.

[3]Although the Defendant cites Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966) as an additional basis, beyond the validity of the seizure and search, for suppression of his statements to police on January 15, 2009, he offers no argument in support of his conclusory assertion. Therefore, the Court will not consider it.

IT IS SO ORDERED this 7th day of October, 2009.

                                              s/ J. DANIEL BREEN
                                              UNITED STATES DISTRICT JUDGE